UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED by _____ D.C.
DKTG
OCT 1 6 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

| | |
|---|---|
| Virgilio Paz-Romero, | ) |
| Petitioner, | ) |
| v. | ) Case No: 00-2114 CIV-HUCK |
| ROBERT WALLIS, Director of District 6, Immigration and Naturalization Service; DORIS MEISSNER, Commissioner, Immigration and Naturalization Service; JANET RENO, Attorney General of the United States; and IMMIGRATION AND NATURALIZATION SERVICE. | ) Agency No. 17339-041 |
| Respondents. | ) |

### SUPPLEMENTAL CLAIM FOR RELIEF TO PETITION FOR WRIT OF HABEAS CORPUS, AND MEMORANDUM OF LAW IN SUPPORT OF SUPPLEMENTAL CLAIM FOR RELIEF

Petitioner Virgilio Paz-Romero, by and through his undersigned counsel, and pursuant to the attached Motion, hereby submits this supplemental claim for relief to his Petition for Writ of Habeas Corpus:

### COUNT FIVE
### DOUBLE JEOPARDY VIOLATION

Petitioner realleges and incorporates by reference paragraphs 1 through 24 of his original Petition, and further alleges that:

37.     Petitioner has already been punished for the crime of conspiracy to murder a foreign official. He was sentenced to twelve (12) years in prison, and was paroled in April, 1998, after

P. 1

having served six and one-half years of that sentence.

38.  While deportation is not "punishment" for purposes of the Fifth Amendment to the United States Constitution, executive detention which exceeds the scope of that which is reasonably necessary to effect deportation can be construed as "punishment," because said detention is "arbitrary and purposeless." See Bell v. Wolfish, 441 U.S. 520 (1979).

39.  Because Petitioner's deportation cannot be effected in the foreseeable future, his executive detention exceeds the scope of what is reasonably necessary to effect his deportation, and his prolonged and indefinite executive detention is therefore arbitrary and purposeless. Petitioner's detention thus constitutes "punishment" for purposes of the Fifth Amendment.

40.  Because Petitioner has already served his sentence for the crime for which he was convicted, the government cannot, in derogation of the double jeopardy clause, visit further punishment upon him.

41.  Respondents have asserted that Petitioner is to be detained for purposes of effecting his deportation. However, in denying Petitioner's request for release bond, the Immigration Judge (the "IJ") found that Petitioner had committed an act which:

> took place with a total disregard for the innocent citizens of this county (sic). [The act] took place in the name of freedom yet took the life of one innocent citizen, maimed another and took the freedom of all these victims. Rarely has this court seen such a callous disregard for the lives of others.
>
> In view of the actions of [Petitioner], I conclude that he is a danger to society and a flight risk. Therefore, the bond of "No Bond" will be sustained.

Petitioner's Ex. "J" at 3.

42.  As a first matter, the IJ apparently saw fit to broaden the scope of the offense for

P. 2

which Petitioner was convicted; Petitioner pled guilty to a conspiracy charge, and there was never any prosecution nor finding of fact that Petitioner had actually committed the killings of Orlando Letelier and Ronni Moffitt.

43. Moreover, it is clear from the conclusion set forth in Paragraph 41 that the IJ condemned Petitioner to indefinite detention not for the purpose of effecting his deportation, but for the purpose of visiting further punishment upon him.

44. Because Petitioner's current executive detention constitutes "punishment," said detention violates his Fifth Amendment right against double jeopardy.

## MEMORANDUM OF LAW

### VI. MR. PAZ'S DETENTION IS ARBITRARY AND PURPOSELESS, AND THUS CONSTITUTES "PUNISHMENT" IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE.

Absent a showing of express intent to punish, if a particular condition or restriction imposed on a detainee is reasonably related to a legitimate nonpunitive governmental objective, it does not, without more, amount to punishment. This, together with the rule that deportation proceedings are civil in nature rather than punitive, has led to the generally accepted proposition that detention pursuant to deportation does not constitute "punishment" for purposes of the Fifth Amendment. However, the Supreme Court has stated that once a condition or restriction becomes arbitrary or purposeless, a court may permissibly infer that purpose of the governmental action is punishment that may not constitutionally be inflicted upon individuals. See Bell v. Wolfish, 441 U.S. 520 (1979). The issue of whether indefinite executive detention pursuant to deportation may, in certain circumstances, constitute punishment has never been thoroughly analyzed, especially not in light of

P. 3

Bell, and therefore the question of whether such ongoing detention may constitute punishment is not a matter that has been settled by the Supreme Court nor by the Eleventh Circuit.

As discussed and argued in Part II of Mr. Paz's original Memorandum of Law, Respondents' continued detention of Mr. Paz exceeds the authority found in INA § 241(a)(6). See Ma v. Reno, 208 F.3d 815 (9th Cir. 2000). Once it was established that Mr. Paz could not be deported in the reasonably foreseeable future, Respondents should not have been able to legally detain him beyond the initial three-month removal period as provided in INA § 241(a). Thus, Respondents' detention of Mr. Paz beyond the removal period -- a term which has now lasted over twenty-seven (27) months -- has been arbitrary and purposeless, because such detention has no reasonable relation to Respondents' interest in deporting him.

As discussed in Part III of Petitioner's original Memorandum of Law, Respondents' detention of Mr. Paz is not narrowly tailored to serve a legitimate governmental purpose, that of deportation. In this sense, the substantive due process analysis may inform this Court's decision as to whether detaining Mr. Paz constitutes "punishment" for purposes of the double jeopardy clause. Because Mr. Paz's detention does not meet the requirements of being narrowly tailored to effect his deportation, it may be inferred to be arbitrary and purposeless, thus violating the double jeopardy clause of the Fifth Amendment.

Furthermore, the intent of the IJ in refusing to grant bond to Mr. Paz appears to have been punitive. The IJ cited the circumstances surrounding the deaths of Orlando Letelier and Ronni Moffitt as his reason for denying bond to Mr. Paz. However, in doing so the IJ impermissibly (1) broadened the scope of culpability for the offense of which Mr. Paz was convicted, and (2) issued an order that was retributive rather than one which was reasonably related to the purpose of

P. 4

deportation. The IJ thus appears to have engaged in an exercise by which he first determined that Mr. Paz has not yet been sufficiently punished for what the IJ perceived to have been Mr. Paz's crime, and then denied bond to Mr. Paz, condemning him to indefinite detention.

### A.   Mr. Paz Does Not Challenge His Removal Order on Double Jeopardy Grounds, But Only His Prolonged Detention.

As a first matter, Mr. Paz does not challenge on double jeopardy grounds the proceedings by which he was found deportable. The Supreme Court has unequivocally held that deportation proceedings are civil in nature, and are not intended to "punish" the alien against whom such proceedings are brought. See INS v. Lopez-Mendoza, 468 U.S. 1032 (1984). However, the Lopez Court was specifically addressing the applicability of the exclusionary rule to deportation proceedings. Id. at 1034. As such, the Court only focused on the procedure by which an illegal alien may be found deportable, stating that "[t]he purpose of deportation is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws." Id. at 1039. The Lopez Court did not in any way address the issue of executive detention once an alien has been ordered removed.

Likewise, Mr. Paz does not in any way contend that his ordered deportation violates the double jeopardy clause, as the issue of whether deportation itself constitutes punishment has been long settled. See, e.g. Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952) (stating that "[d]eportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure"); Carlson v. Landon, 342 U.S. 524, 537 (1952) (stating that "[d]eportation is not a criminal proceeding and has never been held to be punishment"). While Carlson to some extent addressed the issue of detention pursuant to deportation proceedings, the

P. 5

issue was narrowly limited to the Attorney General's discretion to deny bail to aliens arrested under section 22 of the Internal Security Act (for membership in a communist organization) pending a determination as to their deportability. Carlson, 342 U.S. at 526-28. Carlson did not address the issue of detention that follows a final deportation order.

Some courts have concluded based on the above-cited cases that *detention* pursuant to effecting a final order of deportation, no matter how prolonged and seemingly arbitrary, does not violate double jeopardy. See, e.g., Doan v. INS, 78 F. Supp.2d 1101, 1106 (S.D. Cal. 2000); Chukwurah v. United States, 813 F. Supp. 161, 167 (E.D.N.Y. 1993). However, these courts have generally failed to distinguish between initiating a deportation, the deportation itself, and executive detention pursuant to effecting a deportation. Although deportation may wear the cloak of a civil proceeding, it does not necessarily follow that the cloak extends so far as to cover Mr. Paz's prolonged and arbitrary detention, especially where the likelihood of actually deporting him is so remote.

Keeping a man in jail for an indeterminate period is not deportation. Where a deportation cannot be achieved in the reasonably foreseeable future, the resulting indefinite and prolonged executive detention loses its mantle as a necessary part to a civil proceeding, crossing the line into the area of "punishment." This is all the more true where said detention is justified by actions attributed to a detainee but which were never tried and proven in a court of law. See Apprendi v. New Jersey, __ U.S. __, 120 S.Ct. 2348 (2000). Moreover, the Supreme Court has not opined on the subject of whether and at what point executive detention pursuant to deportation might cross the line into the realm of punishment for purposes of the double jeopardy clause.

B.  **The Double Jeopardy Clause Forbids Punishing Someone "Twice" for the Same Offense.**

The Double Jeopardy Clause provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amdt. 5. The Supreme Court has explained that "the Clause serves the function of preventing both successive punishment and successive prosecution," United States v. Dixon, 509 U.S. 688, 704 (1993) (citing North Carolina v. Pearce, 395 U.S. 711 (1969)). Thus, if Mr. Paz has already been punished for his crime, Respondents may not punish him further.

There can be no question that Mr. Paz has been punished for his crime. He was arrested in 1991 and pled guilty to conspiracy to murder a foreign official. When asked for leniency based on Mr. Paz's young age at the time of the offense, the presiding judge said that, while such an argument might have carried some weight in 1976, he could not give Mr. Paz credit for having been a "fugitive." He sentenced Mr. Paz to twelve (12) years' imprisonment, which was the maximum term allowed under his plea bargain with the government. Mr. Paz was thus not only sentenced for the crime of which he was convicted, but that sentence was made more severe by the circumstances of his having lived as a fugitive. Mr. Paz has therefore been punished for his crime, and visiting further punishment upon him violates his right against double jeopardy.

C.  **Detention That Is Purposeless and Arbitrary Constitutes "Punishment."**

Bell v. Wolfish, 441 U.S. 520 (1979), offers some helpful guidance on the subject of when executive or administrative detention might be construed as "punishment" for purposes of the Fifth Amendment:

> [I]f a particular condition or restriction of . . . detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to

P. 7

> "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 539 (internal citations and footnotes omitted). See also Lynch v. Baxley, 744 F.2d 1452, 1463 (11th Cir. 1984). Thus, detention that is not reasonably related to a legitimate goal, or in other words is "arbitrary and purposeless," may be inferred to be "punishment" for constitutional purposes.

Although Bell sought to analyze the problem of pretrial detention via the due process clause of the Fifth Amendment, there is no substantive reason why that analysis should not be applicable to the double-jeopardy clause of that same Amendment. Both clauses turn on the question of whether detention, or the conditions thereunder, constitute "punishment." Therefore, the Bell analysis ought to apply in determining whether Mr. Paz's executive detention constitutes "punishment."

### D. Mr. Paz's continued and prolonged detention constitutes "punishment" in violation of the double jeopardy clause.

In light of Bell, the government must prove that its detention of Mr. Paz is reasonably related to a legitimate government goal, that of deportation. Although the Bell test suggests that only rational basis scrutiny will apply to determining the relation of Mr. Paz's detention to the goal of deportation, Mr. Paz submits that this determination cannot be made in absence of the heightened scrutiny accorded the substantive due process analysis, which provides that the government may not infringe on any fundamental liberty interest at all, no matter the process provided, unless that infringement is narrowly tailored to serve a compelling state interest. See Reno v. Flores, 507 U.S. 292, 302 (1993); see also Part III.B. of Petitioner's original Memorandum. But even should the

P. 8

Court disagree, Respondents' ongoing executive detention of Mr. Paz must fail the Bell test because, under the circumstances, no reasonable relation exists between detaining Mr. Paz and effecting his deportation.

Virgilio Paz is ostensibly being detained to assure his deportation. Indeed, Mr. Paz recognizes that this would be a legitimate goal of his detention if Respondents' ability to deport him had been reasonably foreseeable, and if Respondents had in fact deported him within the removal period set forth in INA § 241(a), encoded at 8 U.S.C. § 1231(a). See Ma v. Reno, 208 F.3d 815 (9th Cir. 2000). But as demonstrated in Mr. Paz's initial Memorandum to this Court, his deportation is anything but reasonably foreseeable, because it is predicated on two disparate and highly speculative events: (1) the downfall of the communist regime in Cuba (which in itself must trigger the termination of Mr. Paz's Deferral of Removal which the IJ issued pursuant to the Convention Against Torture); and (2) the achievement of a repatriation agreement between the successor government in Cuba and the United States. Because these events are not reasonably foreseeable, Respondents cannot claim that detaining Mr. Paz for over twenty-seven months (and counting) is reasonably related to effecting his deportation.

Whether Mr. Paz's detention serves any legitimate purpose depends on whether his detention actually serves the purpose of effecting his deportation. As noted in Mr. Paz's original Memorandum, the only legitimate goal of detention under INA § 241(a)(6) is to effect the alien's deportation. Where an alien's deportation is not reasonably foreseeable, such as in the case here, INA § 241(a)(6) does not authorize Respondents to detain said alien beyond the three-month removal period as defined in the statute. See Ma, 208 F.3d at 818-19.

Simply put, once it was established that Mr. Paz's deportation was not a reasonably

P. 9

foreseeable eventuality, his continued detention became divorced from the purpose of deportation. And once Mr. Paz's detention became divorced from its purpose, that detention became purposeless and arbitrary within the meaning of Bell, and may therefore be considered as punishment for purposes of the double jeopardy clause. Because no reasonable relationship exists between the goal of deportation and Mr. Paz's ongoing detention, said detention violates Mr. Paz's right against double jeopardy.

This is especially true in light of the fact that the IJ appears to have condemned Mr. Paz to indefinite detention in order to punish him further for his crime. In denying Mr. Paz's request for release bond, the IJ found that Mr. Paz had committed an act which:

> took place with a total disregard for the innocent citizens of this county (sic). The assassination took place in the name of freedom yet took the life of one innocent citizen, maimed another and took the freedom of all these victims. Rarely has this court seen such a callous disregard for the lives of others.

Petitioner's Ex. "J" at 3.

It is clear from the foregoing conclusion that the IJ saw fit to summarily conclude that Mr. Paz committed specific acts related to the bombing, acts which were never proven before a jury. Indeed, the government's own witness, Michael Townley, asserted that Petitioner could not have been the "trigger man," and the FBI apparently had forensic evidence which showed that the detonation had been caused by a water puddle. Yet the IJ, quite on his own and without benefit of a trial, in effect concluded that Petitioner was the trigger man, and condemned him to indefinite detention as a result.

Apprendi, supra, stands for the rule that any fact other than a prior conviction that increases the maximum penalty for a crime must be charged in the indictment, tried before a jury, and proved

beyond a reasonable doubt. While Mr. Paz could conceivably have been sentenced to more than twelve years had his case been tried before a jury, <u>Apprendi</u> still applies to his case because his plea bargain was governed by the law of "constitutional" contract, <u>Ricketts v. Adamson</u>, 483 U.S. 1, 16 (1987) (Brennan, J., dissenting) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 75, n. 6 (1977)). Thus, the sentenced imposed under the terms of the plea bargain was the per se maximum sentence as pertaining to Mr. Paz's specific case.

The IJ's review of the "facts" indicates that, rather than evaluating Mr. Paz's current propensity for "dangerousness," as would have been the proper inquiry under INS's own regulations, the IJ instead chose to express outrage at what he inferred to be Mr. Paz's level of culpability in the deaths of Moffitt and Letelier. In doing so, the IJ violated the principle elicited in <u>Apprendi</u> -- that a defendant's sentence may not be enhanced beyond the maximum without a jury finding on every factual element of the offense -- and furthered the appearance of a punitive purpose in denying bond to Mr. Paz.

## CONCLUSION

Virgilio Paz has a constitutional right against being subjected to double jeopardy. Although his deportation order does not constitute a punishment within the meaning of the double jeopardy clause, his prolonged detention does, because that detention serves no purpose other than to punish him. As a result, Mr. Paz's right against double jeopardy is being violated by Respondents' ongoing detention of him, and he should be released forthwith.

**WHEREFORE**, Petitioner respectfully prays that this Honorable Court grant his Supplemental Claim for Relief to Petition for Writ of Habeas Corpus, and Memorandum of Law In Support of Supplemental Claim For Relief, as well as reasonable attorney's fees.

Date: 8/17/00

Respectfully submitted by,

RICE, FOWLER, RODRIGUEZ, KINGSMILL & FLINT, L.L.P.
Attorneys for Petitioner
2655 Le Jeune Road, Suite 805
Coral Gables, FL 33134
Te: (305) 445-2930
Fax: (305) 445-2450

By _____
Carlos A. García-Pérez
Attorney for Petitioner
**Florida Bar No. 106895**
**USDC No. 205301**

## CERTIFICATION OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Supplemental Claim for Relief to Petition for Writ of Habeas Corpus, and Memorandum of Law In Support of Supplemental Claim for Relief was mailed on August 17, 2000 to Mr. Robert Wallis, INS District 6 Director, 7880 Biscayne Boulevard, 11th Floor, Miami, FL, 33138; Ms. Doris Meissner, Immigration and Naturalization Service, District 6 Director, 7880 Biscayne Boulevard, 11th Floor, Miami, FL 33138; Ms. Janet Reno, Attorney General for the United States Office of the United States Attorney for the Southern District of Florida Attention: Guy A. Lewis 99 North East 4th Street Miami, FL 33132; Ms. Janet Reno, Attorney General for the United States Department of Justice, Constitution Avenue and 10th Street North West, Washington, DC 20530 Immigration and Naturalization Service, Care of the District 6 Office, 7880 Biscayne Boulevard 11th Floor, Miami, FL 33138 and Dexter A. Lee, Esq., Assistant United States Attorney, 99 NE 4th Street, Miami, Florida 33132.

By _____
**Carlos A. García-Pérez**
Florida Bar No. 106895
USDC No. 205301